1

2

3

4

5

6

7

8                      IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ROBERT G. BAKER,

11              Plaintiff,                   No. CIV S-09-1290 EFB P

12        vs.

13   JAMES J. WALKER, et al.,
                                             ORDER AND
14              Defendants.                  FINDINGS AND RECOMMENDATIONS

15   _____/

16        Plaintiff is a state prisoner proceeding without counsel in an action brought under 42

17   U.S.C. § 1983.  This action is before the undersigned pursuant to Eastern District of California

18   Local Rule 302(c)(17).  *See* 28 U.S.C. § 636(b)(1).  Presently before the court are defendants

19   Virga, Brandon, Villasenor, and Parker's ("defendants") motion to dismiss (Docket No. 18),

20   plaintiff's motion for a preliminary injunction (Docket No. 20), and plaintiff's motion for in

21   camera review (Docket No. 25).  For the reasons stated below, the undersigned recommends that

22   the complaint be dismissed with leave to amend, and that plaintiff's motion for a preliminary

23   injunction be denied.  In addition, the undersigned denies plaintiff's motion for in camera

24   review.

25   ////

26   ////

1

**I.      Background**

On this action proceeds on plaintiff's August 23, 2010 amended complaint against

defendants Virga, Brandon, Villasenor, and Parker.  Dckt. No. 11.  The complaint and the

attached exhibits reveal the following:[1]

On December 4, 2004, a correctional officer found handwritten notes
pertaining to Northern Structure gang activity in Baker's fecal matter.  (ECF 11 at
5:11-13; 29.) Because of this finding, Baker was placed in administrative
segregation, but released a few days later on December 7, 2004. (*Id.* at 5:26-28,
29.) Baker alleges Defendants Parker and Villasenor "split up and used" the notes
to validate Baker. (*Id.* at 5:23-25.)

On May 17, 2006, Parker wrote a 128-B chrono stating that an
investigation had been conducted and sufficient evidence discovered to identify
Baker as an associate of the Northern Structure (NS) prison gang. (*Id.* at 17.)
Parker listed the following evidence:

1.) (Informant) a confidential memorandum dated April 20,
2006, authored by Officer C. Villasenor identified BAKER
holding the NS appointed position of Block Channel (BC). The BC
responsibilities were identified as enforcing NS rules and
regulations within their assigned housing unit. BAKER was later
promoted from the BC to a Northern Teacher (NT). The NT was
identified as responsible for educating NS associates on the gang
history, bonds, and the overall function of the NS.

2.) (Direct Link/Written Material) a confidential CDC 128
B dated April 14, 2006, authored by Officer G. Parker identified
BAKER to be in possession of several mini notes relevant to the
NS prison gang. Additionally, one of the mini notes in BAKER's
possession contained instructions from inmate JAM, Carlos
(K-60716) aka "Chino" from Sacramento, a validated NS member
housed at Pelican Bay State Prison (PBSP).

3.) (Informant) a confidential memorandum dated June 3,
2005, authored by Officer G. Parker identified BAKER holding the
NS appointed position of Yard Security (YS). The YS position was
identified as responsible for supplying and securing weaponry for
the NS prison gang.

4.) (Informant) a confidential memorandum dated January
10, 2005, authored by Officer D. Shaver identified BAKER as the
overall for the NS within his housing unit. BAKER was identified
as attempting to establish a household in an adjacent building as

---

[1] This summary is taken from defendants' motion to dismiss but is based on the
allegations in plaintiff's complaint and the attached exhibits.

1          well. The term household was identified as NS members/associates
           functioning under the gang policies and rules.
2
                   5.) (Supporting Document) a confidential memorandum
3          dated December 7, 2004, authored by Officer C. Villasenor
           identified BAKER secreting NS mini notes in his rectal area.
4          Secreting the mini notes in the anal cavity was described as a NS
           policy. BAKER was placed on body cavity surveillance and
5          defecated several NS mini notes on December 6, 2004.

6      (*Id.* at 17.)

7          Parker's 128-B stated that the evidence would be "forwarded to the LEIU
       for consideration in acceptance of the validation of Baker as an associate of the
8      NS prison gang." (*Id.*)

9          Ruff, Speer and Buechner (who are not defendants in this action) validated
       Baker as an associate of the NS prison gang on June 14, 2006. (*Id.* at 62.)
10
           Baker alleges that on July 15, 2007, he was give an indeterminate SHU
11     term based on the validation and refers to exhibit "K". (*Id.* at 6:13-15.) This
       exhibit shows that Baker had "received 72 hour notice" [and] was given an
12     opportunity to be heard. (*Id.* at 61.) Moreover, Baker had been "adjudicated and
       found guilty of battery on an [inmate] with a weapon resulting in serious injury."
13     (*Id.* at 61:10-12.) The Complaint's exhibits show that Baker's SHU placement
       was given periodic review. (*Id.* at 45, 57, 61, 66.) Defendant Virga was a member
14     to the Institution Classification Committee (ICC) who reviewed Baker's SHU
       placement on July 14, 2010; . . . after Baker filed his original complaint . . . .
15     (ECF 1; 11 at 8, 66.) Baker alleges that during the review, Baker addressed "his
       illegal indeterminate SHU housing but was only told to appeal it." (*Id.* at 8.)

16

17  Dckt. No. 18 at 1-3.  Plaintiff alleges the following claims for relief in his amended complaint:

18  (1) a Fourteenth Amendment due process violation because plaintiff's administrative appeal was

19  reviewed by defendant Brandon, who allegedly participated in the event or decision being

20  appealed; (2) a Fourteenth Amendment due process violation based on defendants Parker and

21  Villasenor's allegedly improper use of the December 4, 2004 handwritten notes to validate

22  plaintiff as a gang member; and (3) Fourteenth Amendment due process and Eighth Amendment

23  violations for holding plaintiff in the Security Housing Unit ("SHU") since July 15, 2007. *See*

24  Dckt. No. 11.

25  ////

26  ////

1  **II.     Defendants' Motion to Dismiss**

2          Defendants Virga, Brandon, Villasenor, and Parker move to dismiss the complaint for

3  failure to state a claim and for failure to exhaust administrative remedies pursuant to Federal

4  Rules of Civil Procedure ("Rule") 12(b)(6) and 12(b).  Defendants argue that plaintiff has not

5  stated claims for violation of the Eighth or Fourteenth Amendments.  Defendants further argue

6  that plaintiff's claims against Brandon and Virga should be dismissed because plaintiff failed to

7  exhaust administrative remedies for those claims prior to filing suit.  *See* Dckt. No. 18.

8          The exhaustion issue is addressed first, as exhaustion it is a prerequisite to filing suit.

9  *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions . . . until

10 such administrative remedies as are available are exhausted.");  *see also McKinney v. Carey*, 311

11 F.3d 1198, 1199 (9th Cir. 2002) (per curiam) (requiring dismissal where prisoner fails to exhaust

12 administrative remedies before filing suit and tries to do so while case is pending).

13         **A.      Exhaustion of Claims Against Defendants Brandon and Virga**

14         The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought

15 with respect to prison conditions [under section 1983 of this title] until such administrative

16 remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  "Prison conditions" subject to

17 the exhaustion requirement have been defined broadly as "the effects of actions by government

18 officials on the lives of persons confined in prison . . . ."  18 U.S.C. § 3626(g)(2); *Smith v.*

19 *Zachary*, 255 F.3d 446, 449 (7th Cir. 2001); *see also Lawrence v. Goord*, 304 F.3d 198, 200 (2d

20 Cir. 2002).  To satisfy the exhaustion requirement, a grievance must alert prison officials to the

21 claims the plaintiff has included in the complaint, but need only provide the level of detail

22 required by the grievance system itself.  *Jones v. Bock*, 549 U.S. 199, 218-19 (2007); *Porter v.*

23 *Nussle*, 534 U.S. 516, 524-25 (2002) (purpose of exhaustion requirement is to give officials

24 "time and opportunity to address complaints internally before allowing the initiation of a federal

25 case").

26 ////

1    Prisoners who file grievances must use a form provided by the California Department of

2  Corrections and Rehabilitation, which instructs the inmate to describe the problem and outline

3  the action requested.  The grievance process, as defined by California regulations, has three

4  levels of review to address an inmate's claims, subject to certain exceptions.  *See* Cal. Code

5  Regs. tit. 15, § 3084.7.  Administrative procedures generally are exhausted once a plaintiff has

6  received a "Director's Level Decision," or third level review, with respect to his issues or claims.

7  *Id.* § 3084.1(b).

8    Exhaustion of available remedies is mandatory, *Booth v. Churner*, 532 U.S. 731,

9  741 (2001), and "[p]roper exhaustion demands compliance with an agency's deadlines and other

10  critical procedural rules[.]"  *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).  For a remedy to be

11  "available," there must be the "possibility of some relief. . . ."  *Booth*, 532 U.S. at 738.  Relying

12  on *Booth*, the Ninth Circuit has held:

13    [A] prisoner need not press on to exhaust further levels of review once he has
     received all "available" remedies at an intermediate level of review or has been
14    reliably informed by an administrator that no remedies are available.

15  *Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005).

16    Although a motion to dismiss for failure to exhaust administrative remedies prior to filing

17  suit is normally brought under Rule 12(b) of the Federal Rules of Civil Procedure, when ruling

18  on such a motion requires the court to look beyond the pleadings in the context of disputed

19  issues of fact the court must do so under "a procedure closely analogous to summary judgment."

20  *Wyatt v. Terhune*, 315 F.3d 1108, 1119, n.14 (9th Cir. 2003).  Because care must be taken not to

21  resolve credibility on paper as it pertains to disputed issues of material fact, the undersigned

22  applies the Rule 56 standards to exhaustion motions that require consideration of materials

23  extrinsic to the complaint.  *See Chatman v. Felker*, No. Civ. S-06-2912 LKK EFB, 2010 WL

24  3431806, at *2-3 (E.D. Cal. Aug. 31, 2010).

25    Defendants bear the burden of proving plaintiff's failure to exhaust.  *Wyatt*, 315 F.3d at

26  1119.  To bear this burden:

1    a defendant must demonstrate that pertinent relief remained available, whether at
     unexhausted levels of the grievance process or through awaiting the results of the
2    relief already granted as a result of that process. Relevant evidence in so
     demonstrating would include statutes, regulations, and other official directives
3    that explain the scope of the administrative review process; documentary or
     testimonial evidence from prison officials who administer the review process; and
4    information provided to the prisoner concerning the operation of the grievance
     procedure in this case . . . . With regard to the latter category of evidence,
5    information provided [to] the prisoner is pertinent because it informs our
     determination of whether relief was, as a practical matter, "available."

6

7    *Brown*, 422 F.3d at 936-37 (citations omitted).

8         On April 20, 2011, the court informed plaintiff of the requirements for opposing a motion

9    to dismiss for failure to exhaust available administrative remedies as well as a motion pursuant

10   to Rule 56 of the Federal Rules of Civil Procedure. *See Rand v. Rowland*, 154 F.3d 952, 957

11   (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999); *Klingele v. Eikenberry*, 849 F.2d

12   409 (9th Cir. 1988); *Wyatt,* 315 F.3d at 1120, n.14.

13        In support of their motion, defendants submit (1) the declaration of K. Daly, Appeals

14   Coordinator at California State Prison, Sacramento ("Daly Decl."), and (2) the declaration of D.

15   Foston, Chief of the Inmate Appeals Branch for the California Department of Corrections and

16   Rehabilitation ("Foston Decl."). *See* Dckt. No. 18.  Defendants contend that these declarations

17   show that plaintiff did not file an appeal regarding his claim that Brandon improperly reviewed

18   plaintiff's administrative appeal on July 3, 2006.  *Id.* at 12 (citing Foston Decl. ¶ 3 and Daly

19   Decl. ¶¶ 5-6).  Defendants further contend that plaintiff could not have exhausted his claim

20   against defendant Virga, because plaintiff initiated this lawsuit before plaintiff's claim against

21   Virga arose. *Id.* at 13-14.

22        **1.    Defendant Brandon**

23        As noted, plaintiff alleges Brandon violated his right to due process when he reviewed

24   plaintiff's administrative appeal on July 3, 2006. Dckt. No. 11 at 3-4, 14 (Ex. A).  Neither the

25   Daly declaration nor the Foston declaration include any information regarding whether plaintiff

26   filed any administrative appeals concerning Brandon's alleged review of plaintiff's July 2006

6

1   appeal. Rather, each declaration includes a printout that documents plaintiff's appeal history, but

2   does not describe in any detail the issues that were appealed. As for each administrative appeal

3   filed by plaintiff, the printouts show when it was filed, at what level of review it was filed,

4   whether or not it was accepted for review, whether it was granted or denied, and in very general

5   terms, the issue it raised. Aside from explaining that the printout is a record of plaintiff's appeal

6   history, neither Daly nor Foston offer any interpretation of the printouts.

7        The Daly declaration explains that the printout attached to the declaration as Exhibit A

8   includes a list of all appeals plaintiff submitted for review at the first and second levels of

9   review. Exhibit A shows that plaintiff filed numerous appeals in or after July 2006. Daly Decl.,

10  Ex. A. As noted, however, the undersigned is without information to determine whether any of

11  these appeals concerned plaintiff's claim against Brandon.[2] Exhibit A also shows that all of the

12  appeals filed in or after July 2006 were either screened out, cancelled, withdrawn, or denied or

13  granted only in part, at the first or second levels of review. *Id.* Thus, it appears from the Daly

14  declaration that further administrative remedies remained available to plaintiff at subsequent

15  levels of review as to any appeal plaintiff might have filed regarding Brandon's alleged actions.

16  *See Brown*, 422 F.3d at 935 ("The obligation to exhaust 'available' remedies persists as long as

17  some remedy remains 'available'").

18       The Foston declaration explains that the Inmate Appeals Tracking System tracks inmate

19  appeals that are accepted for review at the third level of review, as well as appeals that were

20  received and screened out. Foston Decl. ¶ 3. Attached to the Foston declaration is a copy of the

21  Inmate Appeals Tracking System record for all appeals submitted by plaintiff for third level

22  review. Foston Decl., Ex. A. The appeals record shows that of those appeals plaintiff initially

23  filed in July 2006 or later, ten were accepted for review at the third level and also resolved prior

24  _____

25       [2] Daly did include copies of four of the many appeals filed by plaintiff: SAC-B-09-0043,
    SAC-S-08-01878, SAC-S-07-00900, and SAC-S-06-01498. Daly Decl., Exs B, C, D, E. Daly's
    reasons for including copies of these four appeals are not apparent. The undersigned notes,
26  however, that none of these appeals concern plaintiff's claim against defendant Brandon.

1   to May 2009, when plaintiff commenced this lawsuit.  *Id.*, Ex. A; Dckt. No. 1.  One appeal was

2   also rejected at the third level on the ground that the appeal had been fully adjudicated.  Foston

3   Decl., Ex. A.  The appeals record also notes what issue was raised by each of these appeals,

4   unless the appeal was filed before appeals were identified by the issues they raised.  *Id.*  Based

5   on the descriptions of the issues raised in each of plaintiff's appeals, it appears that only two of

6   them could have addressed plaintiff's claim against defendant Brandon: 1) SAC-06-01498,

7   which appears to have been filed before appeals were identified by issue, and 2) SAC 08-0123,

8   identified as concerning the issue of  "CASE INFO/RECORDS - Other."  *See id.*

9          The Daly declaration includes a copy of SAC-06-01498, which reveals that this appeal

10   did not concern plaintiff's claim against Brandon.  *See* Daly Decl., Ex. E.  Rather, it is Brandon's

11   alleged role in processing this appeal that gives rise to plaintiff's claim against Brandon.  *See*

12   Dckt. No. 11 at 3-4, 13-17 (Exs. A, B).

13          However, there is no evidence regarding the issues grieved in appeal SAC 08-0123, and

14   it is possible it raised a complaint about Brandon's alleged involvement in processing one of

15   plaintiff's appeals.  Additionally, it appears that no further administrative relief was available for

16   this appeal.  *See* Foston Decl., Ex A (showing appeal SAC 08-0123 was denied at the final level

17   of review on August 15, 2008).  Whatever it did or did not include, the facts as to exhaustion are

18   disputed here and exhaustion is an affirmative defense for which defendants bears the burden of

19   proof.  *Wyatt*, 315 F.3d at 1119.  Because appeal SAC 08-0123 could have exhausted

20   administrative remedies for plaintiff's claim against Brandon, and no evidence is submitted to

21   show otherwise, defendants have failed to satisfy their burden of proving the absence of

22   exhaustion as to this claim.

23          **2.      Defendant Virga**

24          Plaintiff also alleges that on July 14, 2010, defendant Virga told plaintiff to appeal any

25   concerns he had regarding his confinement to the SHU.  Dckt. No. 11 at 8, 66 (Ex. L).

26   ////

1    Defendants argue that plaintiff could not have exhausted an inmate appeal concerning Virga's

2    actions on July 14, 2010, because "he initiated this lawsuit six months earlier on January 26,

3    2010."[3]  Dckt. No. 18 at 13.  Obviously, plaintiff could not have included a claim in his original

4    complaint based on an event that had not yet occurred.  Where new claims are raised in an

5    amended complaint regarding conduct that occurred after the initial complaint was filed, the

6    court looks to the time of filing the amended complaint to determine whether the newly-added

7    claims have been properly exhausted.  *Rhodes v. Robinson*, 621 F.3d 1002, 1007 (9th Cir. 2010).

8    Here, plaintiff filed his amended complaint on August 23, 2010.  Dckt. No. 23.  Defendants do

9    not address whether plaintiff properly exhausted his allegation against Virga, apparently based

10   on events occurring on July 14, 2010, prior to filing the amended complaint.  As noted, the

11   alleged failure to exhaust is an affirmative defense on which the defendant bears the burden of

12   proof.  Here, Virga has not presented evidence to show that although the amended complaint

13   adding the claim in question was filed after the alleged event occurred, plaintiff nonetheless

14   failed to exhaust available administrative remedies for that claim.  Accordingly, Virga has failed

15   to satisfy his burden of proving the absence of exhaustion with respect to plaintiff's allegations

16   against Virga.

17          **B.      Failure to State a Claim**

18          Plaintiff alleges the following claims for relief: (1) a Fourteenth Amendment due process

19   violation because plaintiff's administrative appeal was reviewed by defendant Brandon, who

20   allegedly participated in the event or decision being appealed; (2) a Fourteenth Amendment due

21   process violation based on defendants Parker and Villasenor's allegedly improper use of the

22   December 4, 2004 handwritten notes to validate plaintiff as a gang member; and (3) Fourteenth

23   Amendment due process and Eighth Amendment violations for holding plaintiff in the Security

24   ////

25

26          [3] This statement is incorrect.  Plaintiff initiated this lawsuit on May 11, 2009.  *See* Dckt.
     No. 1.

1   Housing Unit ("SHU") since July 15, 2007.[4]  *See* Dckt. No. 11.  Defendants contend plaintiff

2   fails to state a claim upon which relief can be granted.

3                        **1.        Rule 12(b)(6) Standards**

4            To survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint

5   must contain more than a "formulaic recitation of the elements of a cause of action"; it must

6   contain factual allegations sufficient to "raise a right to relief above the speculative level."  *Bell*

7   *Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "The pleading must contain something more

8   . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of

9   action."  *Id*. (quoting 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-

10  236 (3d ed. 2004)).  "[A] complaint must contain sufficient factual matter, accepted as true, to

11  'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949

12  (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff

13  pleads factual content that allows the court to draw the reasonable inference that the defendant is

14  liable for the misconduct alleged."  *Id*.  Dismissal is appropriate based either on the lack of

15  cognizable legal theories or the lack of pleading sufficient facts to support cognizable legal

16  theories.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

17          In considering a motion to dismiss, the court must accept as true the allegations of the

18  complaint in question, *Hospital Bldg. Co. v. Rex Hosp. Trs.*, 425 U.S. 738, 740 (1976), construe

19  the pleading in the light most favorable to the party opposing the motion, and resolve all doubts

20  in the pleader's favor.  *Jenkins v. McKeithen*, 395 U.S. 411, 421, *reh'g denied*, 396 U.S. 869

21  (1969).  The court will "'presume that general allegations embrace those specific facts that are

22

23          [4] On July 12, 2011, plaintiff filed a motion requesting "in camera review" of various
    documents filed with the motion.  Dckt. No. 25.  It appears to be a request that the court consider
24  exhibits that were not attached to plaintiff's complaint in resolving defendants' motion to
    dismiss.  On a Rule 12(b)(6) motion to dismiss, however, the court may not consider materials
25  outside the pleadings.  *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir.
    2001).  Accordingly, plaintiff's motion is denied.  In the event plaintiff chooses to file an
26  amended complaint, he may attach these new documents as exhibits.

1   necessary to support the claim.'" *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 256

2   (1994) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).  The court may

3   consider facts established by exhibits attached to the complaint.  *Durning v. First Boston Corp.*,

4   815 F.2d 1265, 1267 (9th Cir. 1987).  The court may also consider facts which may be judicially

5   noticed, *Mullis v. U.S. Bankr. Ct.*, 828 F.2d at 1388, and matters of public record, including

6   pleadings, orders, and other papers filed with the court.  *Mack v. South Bay Beer Distribs.*, 798

7   F.2d 1279, 1282 (9th Cir. 1986).

8          Pro se pleadings are held to a less stringent standard than those drafted by lawyers.

9   *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir.

10  1985).  However, the court's liberal interpretation of a pro se litigant's pleading may not supply

11  essential elements of a claim that are not plead.  *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir.

12  1992); *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

13  Furthermore, "[t]he court is not required to accept legal conclusions cast in the form of factual

14  allegations if those conclusions cannot reasonably be drawn from the facts alleged."  *Clegg v.*

15  *Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).  The court need not accept

16  unreasonable inferences, or unwarranted deductions of fact.  *W. Mining Council v. Watt*, 643

17  F.2d 618, 624 (9th Cir. 1981).  A pro se litigant is, however, entitled to notice of the deficiencies

18  in the complaint and an opportunity to amend, unless the complaint's deficiencies could not be

19  cured by amendment.  *See Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987).

20                **2.      Brandon's Review of Plaintiff's Administrative Appeal**

21         Plaintiff claims that defendant Brandon violated his right to due process because,

22  contrary to CDCR regulations, Brandon reviewed an administrative appeal regarding an event

23  that allegedly involved defendant Brandon. Dckt. No. 11 at 3-4, 13-17 (Exs. A, B).  Defendants

24  argue that plaintiff fails to state a claim based upon Brandon's alleged involvement in reviewing

25  one of plaintiff's administrative appeals.  Dckt. No. 10-12.

26  ////

1    There are no constitutional requirements regarding how a grievance system is operated.

2   *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (holding that prisoner's claimed loss

3   of a liberty interest in the processing of his appeals does not violate due process because

4   prisoners lack a separate constitutional entitlement to a specific prison grievance system).

5   Therefore, even if Brandon violated CDCR regulations in addressing plaintiff's administrative

6   appeal, he did not violate plaintiff's constitutional rights.  Plaintiff's allegations against Brandon

7   cannot support a claim for relief for violation of a constitutional right and must therefore be

8   dismissed without leave to amend.

9              **3.       Parker and Villasenor's Use of Handwritten Notes**

10    Plaintiff claims that defendants Parker and Villasenor violated his right to due process, as

11  well as the "*Castillo* Settlement Agreement," through their use of the December 4, 2004

12  handwritten notes to validate plaintiff as a gang member over one year later.  Dckt. No. 11 at 5-

13  6, 9, 30-43 (Ex. F).  Defendants argue that these allegations fail to state a claim because: 1) the

14  settlement agreement in *Castillo* did not have the effect of creating or expanding plaintiff's

15  constitutional rights; and 2) a gang validation proceeding is subject to the "some evidence"

16  standard.  Dckt. No. 18 at 8.

17    Plaintiff may not base a claim upon an alleged violation of the settlement agreement in

18  *Castillo*.  Such agreements do not have the effect of creating or expanding an inmate's

19  constitutional rights.  *Cagle v. Sutherland*, 334 F.3d 980, 986–87 (9th Cir. 2003) (consent

20  decrees, which arise out of voluntary settlement, often go beyond constitutional minimum

21  requirements, and do not create or expand rights); *see also Barnett v. Cate*, 2011 U.S. Dist.

22  LEXIS 129960, at *12-13 (E.D. Cal. Nov. 8, 2011) ("In determining whether Plaintiff has stated

23  a claim, the Court looks to whether Plaintiff's factual allegations support his claim that his

24  constitutional rights were violated rather than to simply whether or not there has been an alleged

25  breach of an agreement in a different case.").

26  ////

1    Neither does plaintiff state a due process claim against defendants Parker and Villasenor.

2    The Due Process Clause of the Fourteenth Amendment protects prisoners from being deprived of

3    liberty without due process of law. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).  When a

4    prisoner alleges a due process violation in connection with a prison official's decision to validate

5    the prisoner as a gang member, "some evidence" must support the decision. *Bruce v. Ylst*, 351

6    F.3d 1283, 1287–88 (9th Cir. 2003) (citing *Superintendent v. Hill*, 472 U.S. 445, 455, (1985)).

7    Additionally, the inmate must be provided with adequate notice, an opportunity to present his

8    views, and periodic review. *Toussaint v. McCarthy*, 801 F.2d 1080, 1100-01 (9th Cir. 1986); *see*

9    *also Bruce*, 351 F.3d at 1287 (explaining that only minimal procedural protections apply when

10   assigning suspected gang affiliates to the SHU, because the decision is "'essentially a matter of

11   administrative discretion'" as opposed to a disciplinary measure) (quoting *Munoz v. Rowland*,

12   104 F.3d 1096, 1098 (9th Cir. 1997)).

13   Here, plaintiff does not allege that the decision to validate him as a gang member was not

14   supported by some evidence.  Nor does he allege that he was validated without the required

15   procedural protections.  Rather, plaintiff alleges that reliance on only one source of evidence is

16   insufficient to validate him as a gang member.  Dckt. No. 11 at 5.  But the exhibits to the

17   complaint (which are properly considered on a Rule 12(b)(6) motion, *Durning*, 815 F.2d at 1267)

18   indicate that the evidence used to validate plaintiff came from multiple sources, and that neither

19   Villasenor nor Parker made the decision to validate plaintiff. *Id.* at 17 (Ex. B), 62 (Ex. K).  More

20   importantly, however, due process does not require that the evidence supporting a gang

21   validation come from multiple sources or incidents.  Thus, plaintiff's claim against Villasenor

22   and Parker must be dismissed.

### 4.    Plaintiff's Indeterminate SHU Sentence

24   Plaintiff claims his Eighth and Fourteenth Amendment rights were violated as a result of

25   being housed in the SHU since July 15, 2007.  Dckt. No. 11 at 6-9.  However, plaintiff does not

26   specifically link any defendant to these alleged violations of his rights.  He alleges only that

13

1   defendant Virga participated in a classification committee review of plaintiff's SHU placement

2   in July 2010, and that he instructed plaintiff to file an administrative appeal if he thought the

3   SHU placement was illegal.  *Id.* at 9, 61 (Ex. K).  These allegations fail to state a claim.

4          In order to state a claim under § 1983, a plaintiff must allege: (1) the violation of a

5   federal constitutional or statutory right; and (2) that the violation was committed by a person

6   acting under the color of state law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988).  An individual

7   defendant is not liable on a civil rights claim unless the facts establish the defendant's personal

8   involvement in the constitutional deprivation or a causal connection between the defendant's

9   wrongful conduct and the alleged constitutional deprivation.  *See Hansen v. Black*, 885 F.2d 642,

10  646 (9th Cir. 1989); *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978).

### a.      **Eighth Amendment**

12         A prison official violates the Eighth Amendment's proscription of cruel and unusual

13  punishment where he or she deprives a prisoner of the minimal civilized measure of life's

14  necessities with a "sufficiently culpable state of mind."  *Farmer v. Brennan*, 511 U.S. 825, 834

15  (1994).  To state such an Eighth Amendment claim, a prisoner must allege facts showing that (1)

16  the defendant prison official's conduct deprived him or her of the minimal civilized measure of

17  life's necessities and (2) that the defendant acted with deliberate indifference to the prisoner's

18  health or safety.  *Id.* at 834.  While plaintiff has broadly alleged "cruel and unusual punishment"

19  and "deliberate indifference," Dckt. No. 11 at 9, he has alleged no facts in his complaint that

20  show such inhumane or dangerous conditions or that show that any defendant acted with

21  deliberate indifference to his health or safety.  Accordingly, plaintiff's Eighth Amendment claim

22  based upon his SHU sentence must be dismissed.  Plaintiff will be given leave to amend to

23  provide him an opportunity to allege sufficient facts to state a such a claim.

### b.      **Fourteenth Amendment**

25         To state a claim for violation of the right to procedural due process, plaintiff must allege

26  facts showing: "(1) a deprivation of a constitutionally protected liberty or property interest, and

1   (2) a denial of adequate procedural protections." *Kildare v. Saenz*, 325 F.3d 1078, 1085 (9th Cir.

2   2003).  Defendants argue that plaintiff has not adequately pleaded that his SHU term invoked a

3   constitutionally-protected liberty interest.  Dckt. No. 18 at 8.

4           "[T]he Constitution itself does not give rise to a liberty interest in avoiding transfer to

5   more adverse conditions of confinement." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).

6   However, state regulations may create a liberty interest in avoiding restrictive conditions of

7   confinement if those conditions "present a dramatic departure from the basic conditions of [the

8   inmate's] sentence." *Sandin v. Conner*, 515 U.S. 472, 485 (1995).  Under *Sandin*, a liberty

9   interest may exist where placement in administrative segregation "imposes atypical and

10  significant hardship in the inmate in relation to the ordinary incidents of prison life." *Id.* at 484.

11          In *Sandin*, the U.S. Supreme Court held that no atypical and significant hardship was

12  imposed by a 30-day assignment to single-cell segregated disciplinary housing, because the

13  inmate did not face significantly different conditions there than inmates in protective or

14  administrative segregation and the inmates segregated placement "did not work a major

15  disruption in his environment." *Id.* at 485-86.  At the other extreme, the Court has held that

16  inmates' transfer to an Ohio "Supermax" prison did impose an atypical and significant hardship

17  because of highly restrictive conditions at the Supermax in comparison with all other forms of

18  incarceration in that state, and thus inmates had a liberty interest in avoiding that transfer.

19  *Wilkinson*, 545 U.S. at 213-216, 223-24 (noting that, at the Supermax, "almost all human contact

20  is prohibited," "the light . . . is on for 24 hours," daily one-hour exercise was available "only in a

21  small indoor room," and placement at the Supermax was indefinite, reviewed only annually and

22  disqualified the inmate from eligibility for parole consideration).

23          Here, plaintiff alleges that his SHU housing prevents him from earning credits and will

24  lessen his chances of parole.  Dckt. No. 11 at 7, 8.  He also claims broadly that the SHU sentence

25  imposed an "atypical and significant hardship" on him.  *Id.* at 7.  Plaintiff fails to state a due

26  process claim because inmates do not have a liberty interest in earning work or conduct credits.

1   Cal. Pen. Code § 2933(c) ("Credit is a privilege not a right."); *Sandin v*, 515 U.S. 472; *Dawkins*

2   *v. McGrath*, 2009 U.S. Dist. LEXIS 118152, at *21-23 (E.D. Cal. Dec. 17, 2009).  And, the

3   chance that a disciplinary action might affect an inmate's parole date "is simply too attenuated to

4   invoke the procedural guarantees of the Due Process Clause."  *Sandin*, 515 U.S. at 487.  Plaintiff

5   also pleaded no facts showing how the conditions of his SHU sentence presented a dramatic

6   departure from the basic conditions of his sentence.

7        Accordingly, plaintiff has failed to plead facts showing that he had a liberty interest

8   protected by the Due Process Clause in avoiding indefinite placement in the SHU and that any

9   defendant violated plaintiff's right to that protected interest.  Plaintiff's claim that his SHU term

10  violates the Fourteenth Amendment should therefore be dismissed with leave to amend to

11  provide plaintiff with an opportunity to plead facts sufficient to state such a claim.

12  **III.     Plaintiff's Motion for a Preliminary Injunction**

13       On June 20, 2011, plaintiff filed a motion for a preliminary injunction alleging he has

14  been housed in the SHU for five and a half years.  Dckt. No. 20.  He seeks a court order that

15  would release him to the general population, end alleged harassment concerning his mail, grant

16  him computer access, and allow him to dispute his gang validation.  *Id.* at 4.

17       A preliminary injunction will not issue unless necessary to prevent threatened injury that

18  would impair the court's ability to grant effective relief in a pending action.  *Sierra On-Line, Inc.*

19  *v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984).  A preliminary injunction

20  represents the exercise of a far reaching power not to be indulged except in a case clearly

21  warranting it.  *Dymo Indus. v. Tapeprinter, Inc.*, 326 F.2d 141, 143 (9th Cir. 1964).  In order to

22  be entitled to preliminary injunctive relief, a party must demonstrate "that he is likely to succeed

23  on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that

24  the balance of equities tips in his favor, and that an injunction is in the public interest."

25  *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (citing *Winter v. Natural Res.*

26  *Def. Council, Inc.*, 555 U.S. 7, 20, 129 S. Ct. 365, 172 L.Ed.2d 249 (2008)).  The Ninth Circuit

1   has also held that the "sliding scale" approach it applies to preliminary injunctions—that is,

2   balancing the elements of the preliminary injunction test, so that a stronger showing of one

3   element may offset a weaker showing of another—survives *Winter* and continues to be valid.

4   *Alliance for Wild Rockies v. Cottrell*, 622 F.3d 1045, 1050 (9th Cir. 2010).  "In other words,

5   'serious questions going to the merits,' and a hardship balance that tips sharply toward the

6   plaintiff can support the issuance of an injunction, assuming the other two elements of the *Winter*

7   test are also met.'"  *Id.*

8           In cases brought by prisoners involving conditions of confinement, any preliminary

9   injunction "must be narrowly drawn, extend no further than necessary to correct the harm the

10  court finds requires preliminary relief, and be the least intrusive means necessary to correct the

11  harm."  18 U.S.C. § 3626(a)(2).

12          Plaintiff has not shown a likelihood of success on the merits on his claims regarding his

13  gang validation and SHU sentence.  As discussed above, the complaint fails to state a cognizable

14  claim against any defendant.  Plaintiff may not seek preliminary injunctive relief until the court

15  finds that an amended complaint presents cognizable claims.  *See Zepeda v. United States*

16  *Immigration Service*, 753 F.2d 719, 727 (9th Cir. 1985) ("A federal court may issue an

17  injunction if it has personal jurisdiction over the parties and subject matter jurisdiction over the

18  claim; [however] it may not attempt to determine the rights of persons not before the court.").

19          In addition, plaintiff has not clearly demonstrated that he will suffer irreparable injury if

20  his motion is not granted.  "Preliminary injunctive relief is available only if [plaintiff]

21  'demonstrate[s] that irreparable injury is likely in the absence of an injunction.'"  *Johnson v.*

22  *Couturier*, 572 F.3d 1067, 1081 (9th Cir. 2009) (quoting *Winter*, 555 U.S. at 21).  Under *Winter*,

23  a preliminary injunction may not be granted based only on the possibility of irreparable harm,

24  because such a result would be inconsistent with the court's characterization of injunctive relief

25  as an extraordinary remedy only to be awarded upon a clear showing that the plaintiff is entitled

26  to such relief.  555 U.S. at 22.  To meet the irreparable harm requirement, plaintiff must do more

1   than simply allege harm; he must demonstrate it. *Carribean Marine Servs. Co., Inc., v.*

2   *Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988).  Mere "[s]peculative injury does not constitute

3   irreparable injury to warrant granting a preliminary injunction." *Id.*  Here, plaintiff has not

4   demonstrated he will be irreparably harmed.

5          Plaintiff has failed to demonstrate that he will likely prevail on the merits or that he will

6   suffer irreparable injury if injunctive relief is not granted.  Accordingly, plaintiff's request for a

7   preliminary injunction must be denied.

8   **IV.    Conclusion**

9          In accordance with the above, IT IS HEREBY ORDERED that:

10         1.  Plaintiff's July 12, 2011 motion for in camera review (Docket No. 25) is denied; and

11         2.  The Clerk of the Court shall randomly assign a United States District Judge to this

12   action.

13         Further, IT IS HEREBY RECOMMENDED that:

14         1.  Plaintiff's motion for a preliminary injunction (Docket No. 20) be denied;

15         2.  Defendants' motion to dismiss (Docket No. 18) be granted on the ground that the

16   complaint fails to state a claim upon which relief may be granted; and

17         3.  Plaintiff be granted leave to file an amended complaint, within thirty days of an order

18   adopting these recommendations, curing the deficiencies herein identified in the Eighth and

19   Fourteenth Amendment claims regarding the gang validation and SHU sentence.

20         These findings and recommendations are submitted to the United States District Judge

21   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

22   after being served with these findings and recommendations, any party may file written

23   objections with the court and serve a copy on all parties.  Such a document should be captioned

24   "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections

25   ////

26   ////

1   within the specified time may waive the right to appeal the District Court's order. *Turner v.*

2   *Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

3   Dated:   March 8, 2012.

4

5                             EDMUND F. BRENNAN
                              UNITED STATES MAGISTRATE JUDGE
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26